UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN BUILDING AND CONSTRUCTION
TRADES COUNCIL, AFL-CIO, and GENESEE,
LAPEER, SHIAWASSEE BUILDING AND
CONSTRUCTION TRADES COUNCIL,
AFL-CIO,

    Plaintiffs,

vs                                          Case No: 11-13520
                                          Honorable Victoria A. Roberts
RICHARD SNYDER, Governor of the State of
Michigan, in his official capacity,

    Defendant.
_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR
ATTORNEY FEES AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO STAY**

**I.    INTRODUCTION**

This matter is before the Court on two motions: Plaintiffs' Amended Motion for Attorney's Fees Pursuant to Fed. R. Civ. P. 54(d)(2) (Doc. 42), and Defendant's Motion to Stay Order and Judgment Pending Appeal (Doc. 47)

For the reasons below, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion for attorney's fees.  The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion to stay.

**II.    BACKGROUND**

On February 29, 2012, the Court entered an Order granting Plaintiffs' Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment (Doc. 37).

1

Judgment for Plaintiffs was entered that same day. It states:

> Consistent with the Court's Order of February 29, 2012, **JUDGMENT** enters for Plaintiffs together with costs and attorneys fees. The Court **DECLARES** that the Michigan Fair and Open Competition in Governmental Construction Act (the "Act"), 2011 Mich. Pub. Acts 98, M.C.L. § 408.871, *et seq.* (1) is invalid and unenforceable because it is preempted by operation of the Supremacy Clause of the United States Constitution and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*; and (2) violates Plaintiffs' rights under the National Labor Relations Act. Further, the Court permanently **ENJOINS** enforcement of the Act.

The facts underlying this case were laid out in great detail in that Order and will not be repeated here.

On March 5, 2012, Defendant filed a Notice of Appeal of the Court's February 29 Order and Judgment. The appeal is pending before the Sixth Circuit Court of Appeals.

On March 14, 2012, Plaintiffs filed a motion for attorney's fees. An amended motion was filed on March 15, 2012 and supplemented on March 28, 2012, with itemized billing entries and other exhibits. On March 30, 2012, Defendant filed a motion to stay the Court's February 29 Order and Judgment pending resolution of his appeal before the Sixth Circuit.

### III.   ANALYSIS

#### A.   Plaintiff's Motion for Attorney's Fees

##### 1.   Stay of Costs and Attorney's Fees

The Court first addresses Defendant's request to stay an award of costs and attorney's fees until after the resolution of his appeal. As part of its motion to stay the Court's February 29 Order and Judgment, Defendant says "it would be impracticable to award such fees until all appeals have been exhausted, given the complexity of this

matter of first impression; the Councils will not suffer harm from the stay; and the public interest strongly favors staying the expenditure of significant State funds given the unsettled nature of the issue before the Circuit Court of Appeals." Doc. 47, p.2.

Fed. R. Civ. P. 54(d)(2) provides that a prevailing party may move for attorney's fees after entry of judgment. The notes to the 1993 Amendments discuss the district court's two options when faced with a motion for attorney's fees filed after an appeal is taken on the merits. The court may promptly rule on a fee request so that "any appellate review of a dispute over fees [may] proceed at the same time as a review on the merits of the case." *Id.* Or, the court may "defer its ruling on the motion, or may deny the motion without prejudice, directing . . . a new period for filing after the appeal has been resolved." *Id.* The 1993 Amendments to Rule 58, Entering Judgment, explain further:

> Particularly if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved. However, in many cases it may be more efficient to decide fee questions before an appeal is taken so that appeals relating to the fee award can be heard at the same time as appeals relating to the merits of the case.

The Sixth Circuit does not appear to have expressed a preference for prompt adjudication of motions for attorney's fee. The Court believes an award of attorney's fees at this stage is premature. The merits of the case are now on review before the Sixth Circuit Court of Appeals. If Plaintiffs prevail, they will be entitled to additional fees for time spent on the appeal. *Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 450 (6th Cir. 2009) ("Where a statute provides for an award of attorney's fees to a prevailing party, 'reasonable appellate fees may [also] be awarded to [the] prevailing

part[y].'") (citation omitted). If the Court's decision is reversed in full, as Defendant urges, then Plaintiffs will no longer be a prevailing party, and likely would not be entitled any fees. A third option is also possible: the Sixth Circuit could affirm certain parts of the Court's order, and overrule others. If that were to occur, this Court would need to consider Plaintiff's partial success in calculating a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In short, the decision whether to award fees, and in what amount, is certain to be affected by the pending appellate litigation.

Staying the Fees Motion until after appeals have been exhausted is necessary to avoid piecemeal litigation. Indeed, this was the approach taken in this District in the case *Gratz v. Bollinger*, 353 F.Supp.2d 929 (E.D. Mich. 2005), discussed by the parties in their briefs. There, the District Judge waited until after appeals to the Sixth Circuit and the Supreme Court were complete before awarding fees. It would not be in the interest of judicial economy to award fees now, only to revisit the issue after the appellate litigation is complete.

Further, the fee petition itself does not present difficult legal issues that would warrant an expeditious trip to the Sixth Circuit. Rather, Plaintiffs' fee petition involves the application of straightforward legal principles. In fact, Defendant admits that Plaintiffs are prevailing parties and that the Court is entitled to award attorney's fees. Doc. 51, p.1 ("The Governor acknowledges that *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103 (1989) (*Golden State II*) is controlling authority and requires this Court to find that when the NLRA preempts a state action, the Councils' rights are violated under § 1983 and § 1988 applies to allow the Court to shift attorney fees to the prevailing party."). The decision whether to grant fees here turns solely on whether

4

Plaintiffs are prevailing parties. This is a decision that this Court can easily make, subject to the results of the appellate litigation. And though Defendant disputes the amount of fees Plaintiffs claim, this Court is well-suited in its role as fact finder to resolve this type of dispute, and need not do so now.

Lastly, a stay of the fee motion is in the interests of justice. The Court believes the reasoning of its February 29 Order is correct but acknowledges that this case presents new and difficult issues, and that reasonable jurists could disagree about the proper outcome. Staying an award of attorney's fees prevents Defendant from having to pay an uncertain judgment or posting a bond. Plaintiffs will not be prejudiced by a stay because they may account for the delay, if ultimately successful, by requesting interest, requesting higher hourly rates to account for the passage of time, or by adjusting the fee based on historical rates to reflect its present value. *Missouri v. Jenkins*, 491 U.S. 274, 282-83 (1989).

Accordingly, Plaintiffs motion for fees is **DENIED WITHOUT PREJUDICE**. Plaintiff may refile the motion after the conclusion of the appellate litigation. Defendant's motion to stay is **GRANTED WITH RESPECT TO ATTORNEY'S FEES**. Defendant's motion to stay the merits is discussed below.

### B. Defendant's Motion to Stay

Defendant asks the Court to stay its February 29 Order and Judgment pending appeal pursuant to Fed. R. Civ. P. 62(c). In determining whether to grant a stay, the Court must consider the same four factors considered in deciding a motion for preliminary injunction:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if the court grants the stay; and,

(4) the public interest in granting the stay.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (citation omitted).

Though the factors are the same for both a preliminary injunction and a stay pending appeal, the balancing process is not identical due to the different procedural postures. *Id.* Most notably, a motion for stay pending appeal is made after significant factual development and after the court has fully considered the merits. *Id.* As a result, a movant seeking a stay pending appeal will have a greater difficulty in demonstrating a likelihood of success on the merits. A party seeking a stay must demonstrate that "there is a likelihood of reversal." *Id.* This high standard is justified because "there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record . . . ." *Id.*

However, to justify the granting of a stay, a movant need not always establish a high probability of success on the merits. *Ohio ex. rel. Celebrezze*, 812 F.2d 288, 290 (6th Cir. 1987). Rather, "[t]he probability of success on the merits that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent the stay." *Id.* This means that a stay may be granted with either a high probability of success on the merits and some irreparable injury, or serious questions going to the

merits and "irreparable harm which decidedly outweighs any potential harm to the defendant if a stay is issued." *Id.* (citation omitted). Mere possibility of success on the merits is never sufficient though. *Id.*

In evaluating the harm to the moving party and others depending on whether or not the stay is granted, the court looks to three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (citing *Ohio ex rel. Celebrezze*, 812 F.2d at 290). The harm alleged must be irreparable. *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). In addition the harm must be "both certain and immediate, rather than speculative or theoretical." *Id.* (citing *Wisconsin Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

With these guiding principles in mind, the Court turns its analysis to the four factors for granting a stay.

### 1. Likelihood of Success on the Merits

Based upon the record before the Court, and the arguments set forth in Defendant's Motion to Stay, the Court believes that Defendant established no more than a mere possibility of success on the merits. A mere possibility of success on the merits is not sufficient to justify a stay. *Griepentrog*, 945 F.2d at 153 (citing *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)).

Defendant raises several arguments as to why he is likely to prevail on the merits. First, he says that the law is far from settled in this area, and points to the inconsistent decisions that recently issued in Iowa and Idaho. *Cf. Cent. Iowa Bldg. & Constr. Trades Council v. Branstad*, No. 11-00202 (S.D. Iowa Sept. 7, 2011); *Idaho*

7

*Bldg. & Constr. Trades Council v. Wasden*, No. 11-00253 (D. Idaho Jan. 3, 2012). Defendant also says that the Court engaged in a novel interpretation of precedent by declining to follow the D.C. Circuit's decision in *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 34 (D.C. Cir. 2002), and instead "adopt[ing]" a decision of the Ohio State Supreme Court, *Ohio State Bldg. & Constr. Trades Council v. Cuyahoga County Board of Commissioners*, 781 N.E.2d 951 (Ohio 2002). Defendant also argues that the fact that this case raises issues of first impression in this circuit is sufficient to satisfy the likelihood of success on the merits prong.

The Court is reluctant to discuss in any depth the merits of its February 29 Order, especially since the Sixth Circuit now has jurisdiction. The February 29 Order speaks for itself. The Court devoted substantial resources to this case and is now very familiar with the facts and applicable law. The Court is confident that it reached the correct conclusions and that its Order will be upheld on appeal. That said, the Court will briefly address Defendant's arguments.

First, the fact that district courts in Iowa and Idaho reached discordant conclusions on similar facts does not alone establish a likelihood of success on the merits. At most, these cases establish a mere possibility of success on the merits, which is insufficient to warrant a stay. Second, Defendant makes much of a quotation in the February 29 Order to an Ohio Supreme Court decision, and repeatedly states that this Court "relied upon" or "adopted" non-precedential state authority. This is simply not an accurate characterization of the February 29 Order. Because the Court was not aware of Sixth Circuit precedent directly on point, it cited the Ohio case as *persuasive* authority to explain its position, not as controlling precedent. Lastly, the fact that this

8

Court did not follow *Allbaugh* does not establish a likelihood of success on the merits. *Allbaugh* is not controlling authority in this circuit. Further, the Court believed that the two-prong market-participation test formulated by the Fifth Circuit in *Cardinal Towing & Auto Repair Inc. v. City of Bedford*, 180 F.3d 686, 693 (5th Cir. 1999) was a more accurate distillation of Supreme Court precedent than the single-prong test in *Allbaugh*. The Court is confident its application of the *Cardinal Towing* test rather than the *Allbaugh* test will be upheld on appeal.

Defendant has failed to establish more than a mere possibility of success on the merits. This factor weighs against a stay.

### 2. Irreparable Injury to Moving Party

As stated above, the harm alleged is evaluated in terms of its substantiality, the likelihood of its occurrence, and the proof provided by the movant. *Griepentrog*, 945 F.2d at 154.

Defendant says the State and People of Michigan will suffer irreparable harm absent a stay because the Court's February 29 Order compromises the State's ability to ensure prudent spending of government funds. Defendant says the Act was passed to ensure open competition for bidding on government construction projects, thereby decreasing costs to Michigan taxpayers. But, since the Court entered an injunction banning enforcement of the Act, certain governmental units have again begun to restrict bids to contractors who are willing to become a party to a PLA. Defendant says the Court's Order has produced two types of irreparable harm: (1) imprudent expenditure of taxpayer dollars which cannot be recouped; and (2) preclusion of Michigan general contractors from participating in Michigan's free labor market.

The problem with Defendant's arguments is that the Court's Order does not require the State or its subdivisions to incorporate PLAs into construction projects. Rather, the Order restores the status quo that existed prior to the passage of the Act, when the State and its subdivisions were free to exercise discretion on a case-by-case basis whether or not to use a PLA. Thus, governmental units are now free to enter into PLAs when they determine on an individualized basis that it is in their best interests.

Nor does the court order prohibit so-called "merit shop" contractors from bidding on projects that have a PLA in place. Non-union contractors are free to bid on projects with PLAs, so long as they agree to adhere to the terms of the PLA. With that in mind, it is difficult to see how the Court's Order causes any irreparable harm at all. The affidavit attached to Defendant's brief actually illustrates this point quite well. In that affidavit, a non-union contractor states that he "does not bid on projects . . . where the governmental unit requires [the contractor] to become signatory to a [PLA]" because he believes working under a PLA "is not in the best interest of the [company] or its employees." Doc. 47, ex. 2. This contractor is certainly free to choose not to bid on projects that have PLAs in place, but it is a stretch to say that he is irreparably harmed where he has made a personal policy decision not to bid on projects that are technically still available to him.

In short, the Court's February 29 Order does not mandate PLAs on State construction projects, nor does it prohibit non-union contractors from bidding on projects that have PLAs in place. It is difficult to see how any irreparable harm results when parties are free to exercise discretion whether to use a PLA, and whether to agree to be bound by a PLA.

Lastly, the Court rejects Defendant's argument that its decision will result in harm to Michigan taxpayers. The Court explicitly found in its Order that the research regarding cost savings and the use of PLAs is, at best, inconclusive. It is not going to revisit that conclusion now. Further, harm must be "both certain and immediate, rather than speculative or theoretical." *Griepentrog*, 945 F.2d at 154.

Defendant does not demonstrate irreparable harm. This factor weighs against a stay.

Because Defendant has not established more than a possibility of success on the merits, and has not established irreparable harm, the Court need not consider the last two factors. However, for the sake of completeness, it will address them very briefly.

### 3. Harm to Others

Defendant says Plaintiffs will not suffer any irreparable harm if the Court enters a stay because "throughout this litigation, the Council's allegations of harm and injury have been abstract, incomplete, and otherwise illusory and insufficient to sustain a cause of action." Doc. 47 p.8. Defendant appears to be questioning the Court's conclusion that Plaintiffs have standing. While Defendant is free to make that argument on appeal, the Court will not revisit it here. The Court's February 29 Order found that the Michigan Act effectively banned PLAs from state construction projects, resulting in direct harm to Plaintiffs. The Court, therefore, enjoined the Act. The Court is not going to revisit its conclusion that the Michigan Act harmed the Plaintiffs.

### 4. The Public Interest

The public interest "lies in a correct application of the federal constitutional and

11

statutory provisions upon which the claimants have brought this claim." *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). Thus, the public interest does not permit states to pass laws that conflict with the NLRA, or regulate within an area that the NLRA intended to leave unregulated.

## IV. CONCLUSION

For these reasons, Plaintiff's motion for attorney's fees is **DENIED WITHOUT PREJUDICE**. Defendant's motion to stay is **GRANTED** with respect to attorney's fees, and **DENIED** with respect to the merits.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: May 23, 2012

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 23, 2012.

S/Linda Vertriest
Deputy Clerk

---